IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JIBRIIL A. HERSI, | ) | Case No. 1:18-cv-2437 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DAVE MAQUIS, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Jibriil Hersi, a former Ohio prisoner now serving a period of post-release control under

the Ohio Adult Parole Authority's supervision[1], seeks a writ of habeas corpus under 28 U.S.C.

§ 2254.  Hersi claims that his convictions and sentences in *State v. Hersi*, Medina Cty. Ct.

Comm. Pl. Case No. 16-CR-0126, violated his constitutional rights.  ECF Doc. 1; ECF Doc. 3-1.

Respondent, Warden Dave Marquis[2], filed a return of writ on March 13, 2019.  ECF Doc. 9.

Hersi did not file a traverse.  On January 21, 2020, the court set a final deadline of February 21,

---

[1] Ohio Department of Corrections records show that Hersi's prison term ended on January 11, 2020, and he was placed under Adult Parole Authority supervision at that time.  Offender Search Results (last visited May 26, 2020).  Hersi's transfer from prison to post-release control does not defeat this court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).

[2] Dave Marquis was Warden of Richland Correctional Institution, where Hersi was incarcerated, when he filed his petition.  Ed Sheldon is now Warden of Richland Correctional Institution.  Richland Correctional Institution, https://drc.ohio.gov/rici (last visited May 26, 2020).  Further, because Hersi is now under the Adult Parole Authority's supervision, the Adult Parole Authority is the appropriate respondent.

2020, for filing a traverse.[3]  CM/ECF for N.D. Ohio Case No. 1:18-cv-2437, Order (Jan. 21, 2020).  This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Hersi's petition.[4]

For the reasons stated below, I recommend that Hersi's Ground One claim be DENIED as meritless and that his Ground Two claim be DISMISSED as procedurally defaulted.  I further recommend that Hersi's call for investigation in his "Supplement to Petition for Writ of Habeas Corpus" (ECF Doc. 3-1) be DISMISSED because it fails to state an issue cognizable on federal habeas review.  Finally, I recommend that Hersi not be granted a certificate of appealability.

## I.     State Court Record

### A.     State Trial Court, Case No. 16- CR-0126

On March 23, 2016, a Medina County, Ohio grand jury indicted Hersi on: one count of "operat[ing] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the motor vehicle to a stop, and . . . caus[ing] substantial risk of physical harm to persons or property," in violation of Ohio Rev. Code § 2921.331(B)(C)(5)(a)(ii); and one count of "knowingly caus[ing] or attempt[ing] to cause physical harm to another, to wit: Richard Bell, by means of a deadly weapon," in violation of Ohio Rev. Code § 2903.11(A)(2).  ECF Doc. 9-1 at 4.

Before trial, Hersi through counsel filed a motion to suppress all evidence seized by police during his initial traffic stop and obtained thereafter because: (1) police stopped his

---

[3] The court's order was sent to Hersi's then-last known address, #693-957, VOA, 1323 Champlain St., Toledo, OH 43604.  On February 10, 2020, the order was returned as not deliverable.  ECF Doc. 23.  The record demonstrates that Hersi was warned that he had the duty to update his address.  1ECF Doc. 5 at 2 (initial order); ECF Doc. 17 (October 2019 notice of address change).  Nevertheless, Hersi did not update his address with the court until May 18, 2020.  ECF Doc. 26.
[4] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference.  ECF Doc. 2.

vehicle without just cause;(2) the police unreasonably detained, arrested, and questioned him on the roadside without first advising him of his *Miranda* rights; (3) police forced and/or coerced him into making statements; (4) police arrested him without probable cause; and (5) police stopped his vehicle based on his race.  ECF Doc. 9-1 at 17-18, 25.  After a hearing, the court denied Hersi's motion to suppress on September 13, 2016.  ECF Doc. 9-1 at 37-39; *see also* ECF Doc. 9-1 at 36 (order scheduling hearing for September 9, 2016).

Hersi's trial was set for February 27, 2017.  ECF Doc. 9-1 at 41.  After the State of Ohio rested, Hersi, through counsel, filed a Criminal Rule 29 motion for acquittal and renewed the motion after defense rested.  ECF Doc. 9-1 at 41.  The trial court overruled Hersi's motions for acquittal.  ECF Doc. 9-1 at 41.  On March 3, 2017, the jury returned a verdict finding Hersi guilty of failing to comply with an order or signal of a police officer and felonious assault.  ECF Doc. 9-1 at 41.  On March 20, 2017, the trial court sentenced Hersi to an aggregate prison sentence of three years.  ECF Doc. 9-1 at 50.  The court also stated that Hersi's prison sentence would be followed by a mandatory three-year term of post-release control for the felonious-assault charge and a discretionary three-year term of post-release control for the failure-to-comply charge.  ECF Doc. 9-1 at 50.

### B.    Direct Appeal, Case No. 17-CA-0021-M

On April 18, 2017, Hersi, through new counsel, filed a notice of appeal to the Ohio Court of Appeals.  ECF Doc. 9-1 at 53.  Hersi's appellate brief raised two assignments of error:

1.  The Trial Court erred as a matter of law in its jury instruction defining the essential element of "police officer" as to Count I, the charged offense of failure to comply with order or signal of a police officer in violation of R.C. 2921.331(B) (C)(5)(a)(ii), where the civilin [*sic*] motor carrier enforcement division safety inspector was not a trained "peace officer" and did not meet the definition of "police officer" under R.C. 2921.331(F) and R.C. 4511.01(Z).

3

2. The evidence was insufficient to support the jury verdicts of "guilty" as to both Count I, the charged offense of failure to comply with an order or signal of police officer, and Count II, the charged offense of felonious assault, and the Appellant's convictions as to both counts were against the manifest weight of evidence.

ECF Doc. 9-1 at 63, 73-91.  Hersi specifically argued, in relevant part, that:

The state of Ohio failed to establish beyond a reasonable doubt the essential elements of the offense of felonious assault, in violation of R.C. 2903.11(A)(2), that Mr. Hersi did "knowingly cause or attempt to cause physical harm to another, to wit: Richard Bell, by means of deadly weapon."
* * *

There was no testimony or evidence presented by the State of Ohio at trial concerning <u>actual</u> "physical harm to another, to wit: Richard Bell." * * * Although there was video from both Trooper Melicant and Trooper Mosser's vehicles, there was no video at all from Inspector Bell's lane of travel.  Inspector Bell acknowledged at trial that the wind could blow an empty trailer – such as Mr. Hersi's trailer – sideways.  Inspector Bell testified that the first incident of alleged swerving by Mr. Hersi into his left lane of travel was probable [*sic*] an accident, where Mr. Hersi was on the cell phone and looked to the left in Inspector Bell's direction.  Inspector Bell testified that the second incident of alleged swerving by Mr. Hersi into his left lane of travel was much the same as the subsequent alleged swerve by Mr. Hersi into Trooper Melicant's lane of travel as his tractor trailer slowed down on I-71, which was alleged captured on the video from Trooper Melicant's vehicle.  However, the video from Trooper Melicant's vehicle did <u>not</u> show any swerving on the part of Mr. Hersi's tractor-trailer.

Mr. Hersi denied the accusations, made by Inspector Bell, that Mr. Hersi had swerved his tractor-trailer from the right lane on I-76 into Inspector Bell's left lane of travel on two separate occasions, when Inspector Bell tried to get his attention.  Mr. Hersi consistently denied that he ever tried to harm Inspector Bell.

ECF Doc. 9-1 at 88-90 (emphasis in original) (citations omitted).

On January 19, 2018, the Ohio Court of Appeals affirmed Hersi's convictions and sentences.  ECF Doc. 9-1 at 125-38.  With regard to Hersi's sufficiency-of-the-evidence claim, the Court of Appeals held:

{¶ 28}  After reviewing the evidence presented at trial in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence that Mr. Hersi committed the offense of failure to comply with an order or signal of a police officer, which caused a substantial risk

4

of serious physical harm to persons or property, and committed the offense of felonious assault. Given the substantial length of the pursuit and the fact that it occurred at highway speeds and included several people and vehicles that could have been involved in serious or even fatal accidents due to Mr. Hersi's actions, we conclude that any rational trier of fact could have found all of the essential elements of the above offenses proven beyond a reasonable doubt.

*State v. Hersi*, Ninth Dist. Medina No. 17CA0021-M, 2018-Ohio-123, ¶ 28 (January 19, 2018);

ECF Doc. 9-1 at 136.

### C. Application to Reopen Direct Appeal, Case No. 17-CA-0021-M

On April 11, 2018, Hersi filed a *pro se* Ohio App. R. 26(B) application to reopen his

direct appeal. ECF Doc. 9-1 at 139-45. Hersi's application to reopen indicated that he wished to

raise one new claim before the Ohio Court of Appeals:

> Mr. Hersi's due process rights under the Fourteenth Amendment to the United States Constitution were violated because the indictment failed to specify which of the two instances of Hersi's alleged swerving of the semi-truck constituted the basis for the felonious assault charges[].

ECF Doc. 9-1 at 140. Specifically, Hersi said that the indictment was deficient because it did not

indicate whether his alleged swerving at Bell or his alleged swerving at Melicant constituted the

felonious assault. ECF Doc. 9-1 at 140. Hersi argued that the ambiguity in the indictment, along

with the failure of the prosecution's closing arguments and court's jury instructions to correct the

ambiguity, left Hersi without knowing whether he was convicted of feloniously assaulting Bell

or Melicant. ECF Doc. 9-1 at 142-44. Hersi also noted that, because he did not object to the

indictment before trial as required under Ohio Crim. R. 12(C), this assignment of error would be

subject only to plain error review. ECF Doc. 9-1 at 140. Finally, Hersi asserted that counsel's

representation was constitutionally ineffective for failing to raise this claim because the court

would have likely granted him relief and vacated his felonious assault charge if the claim had

been presented on direct appeal. ECF Doc. 9-1 at 144.

On May 24, 2018, the Ohio Court of Appeals denied Hersi's application to reopen his

direct appeal, stating:

> Mr. Hersi argues that he received ineffective assistance of appellate counsel
> because counsel failed to argue on appeal that the indictment did not specify
> whether the felonious assault charge was based on Mr. Hersi swerving his semi-
> truck toward Inspector Richard Bell or toward Trooper Phil Melicant.  Upon
> review of the record, we note that Count II of Mr. Hersi's indictment states, in
> relevant part: "The Jurors of the Grand Jury * * * do find and present that * * *
> JIBRIIL A. HERSI unlawfully did knowingly cause or attempt to cause physical
> harm to another, *to wit: Richard Bell*, by means of a deadly weapon, in violation
> of [R.C. 2903.11(A)(2)], a felony of the second degree * * *."
>
> This Court has reviewed Mr. Hersi's arguments and concludes that appellate
> counsel's failure to raise this additional argument did not cause counsel's
> performance to fall below an objective standard of reasonable representation.  Mr.
> Hersi has not met his burden of establishing that there is a genuine issue as to
> whether he has a colorable claim of ineffective assistance of counsel and has not
> shown that: (1) appellate counsel was deficient for failing to raise the issues that
> he now presents, or (2) there was a reasonable probability of success had counsel
> presented those claims on appeal.

ECF Doc. 9-1 at 149-51 (emphasis, alterations, and omissions in original)

### D.     Appeal to the Ohio Supreme Court, Case No. 2018-0830

On June 13, 2018, Hersi *pro se* filed a notice of appeal to the Ohio Supreme Court.  ECF

Doc. 9-1 at 152.  Hersi's memorandum in support of jurisdiction asserted two propositions of

law:

> Proposition of Law 1:  Hersi was deprived effective assistance of appellate
> counsel in violation of the Sixth Amendment to the United States Constitution
> when appellate counsel failed to raise: "Hersi's Due Process rights under the
> Fourteenth Amendment to the United States Constitution were violated when the
> indictment failed to specify which of the two instances of Hersi's alleged
> swerving constituted the basis for the felonious assault charge."
>
> Proposition of Law 2:  Hersi was deprived effective assistance of appellate
> counsel in violation of the Sixth Amendment to the United States Constitution
> when appellate counsel failed to raise:  "Hersi's felonious assault conviction was
> obtained in violation of the Due Process Clause of the Fourteenth Amendment to
> the United States Constitution because the State of Ohio failed to produce

> sufficient evidence that Hersi 'caused or attempted to cause serious physical
> harm' to Trooper Melicant or Officer Bell."

ECF Doc. 9-1 at 165, 168-81.  The state did not file an opposing brief.  On September 26, 2018,

the Ohio Supreme Court declined to accept jurisdiction over Hersi's appeal.  ECF Doc. 9-1 at

181.  Hersi did not pursue a United States Supreme Court appeal.

## II.      Federal Habeas Petition

On October 22, 2018, Hersi filed his petition for writ of habeas corpus.  ECF Doc. 1.

Hersi's petition raises two grounds for relief:

> **Ground One:**  Hersi was deprived effective assistance of appellate counsel in
> violation of the Sixth Amendment to the United States Constitution when
> appellate counsel failed to raise "Hersi's Due Process rights under the Fourteenth
> Amendment to the United States Constitution [were] violated when the indictment
> failed to specify [which] of the two instances of Hersi's alleged swerving
> constituted the basis for the felonious assault charge.

> **Ground Two:**  Hersi was [deprived of] effective assistance of appellate counsel
> . . . in violation of the Sixth Amendment to the United States Constitution when
> appellate counsel failed to raise: Hersi's felonious assault conviction was obtained
> in violation of the Due Process clause of the Fourteenth Amendment to the United
> States Constitution because the State of Ohio failed to produce sufficient evidence
> that Hersi 'caused or attempted to cause serious physical harm' to Trooper
> Melicant or Officer Bell."

ECF Doc. 1 at 4-5.  On January 10, 2019, Hersi filed a "Supplement to Petition for Writ of

Habeas Corpus," which appears to ask the court to investigate confusion that developed

regarding the scheduling of a hearing to address his felonious assault charge on December 2,

2016, and March 2 and 3, 2017.  ECF Doc. 3-1 at 1-3.

## III.     Applicable Legal Standards

### A.      AEDPA Standard for Merits Review

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and

Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), which

established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

When the claim presented in a habeas corpus petition has been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*Bobby v. Dixon*, 565 U.S. 23, 24, (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## B. Procedural Default

"Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)). "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* at 826-827 (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted); 28 U.S.C. § 2254(b)(1)(A). Here, the petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  Nevertheless, petitioners are only required to have pursued *available* remedies and are not required to pursue *clearly futile* state remedies.  *See Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d at 827.  Here, federal habeas review is barred when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available.  *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To determine whether an Ohio procedural rule bars habeas review, courts in the Sixth Circuit apply a four-part test: (1) did the petitioner fail to comply with an Ohio procedural rule?; (2) do Ohio courts regularly enforce that rule?; (3) is the rule an adequate and independent state ground for denying review of a constitutional claim?; and (4) can the petitioner show cause and prejudice excusing the default?  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Williams v. Coyle*, 260 F.3d 684, 693; *see also Gerth*, 938 F.3d at 829-830 (holding that Ohio's *res judicata* doctrine is an adequate and independent state procedural ground that Ohio courts regularly apply).

When the respondent asserts that the petitioner failed to "fairly present" his claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis

for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."  *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external factor to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual

11

innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998),

and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v.*

*Delo*, 513 U.S. 298, 324 (1995).

## IV.    Facts

Analysis of Hersi's petition begins with the facts recited in the Ohio Court of Appeals'

opinion on direct appeal.  These factual findings are presumed correct unless Hersi rebuts them

with clear and convincing evidence.  28 U.S.C. § 2254(c)(1); *Wiggins*, 539 U.S> at 528-29; *Burt*,

571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

> {¶ 17} . . . While parked off of Interstate 76 and talking with Troopers Phillip
> Melicant and Matt Mossor on March 6, 2016, Inspector Bell testified that he used
> uniform statistics and randomly selected a semi-truck that passed by the parked
> officers.  He activated his siren and overhead lights and attempted to pull the
> semi-truck over before it reached the upcoming weigh station, so he could then
> direct the semi-truck into the weigh station and perform a safety inspection.  Mr.
> Hersi was the driver of the randomly-selected semi-truck.  Inspector Bell testified
> that when Mr. Hersi did not pull over, he pulled along the side of Mr. Hersi's
> semi-truck, varied his siren sounds, and attempted to get Mr. Hersi's attention by
> motioning to him to pull his semi-truck over to the side of the road.  Mr. Hersi
> was on the phone, but looked down at Inspector Bell, made eye contact with him,
> and then swerved his semi-truck into Inspector Bell's lane of travel, causing the
> inspector to apply his brakes.  When questioned on cross-examination as to
> whether the swerve could have been a mistake, Inspector Bell testified that Mr.
> Hersi "didn't mistakenly turn his steering wheel."  Mr. Hersi then swerved his
> semi-truck back into his original lane of travel.
>
> {¶ 18} Inspector Bell pulled along the side of Mr. Hersi's semi-truck a second
> time and continued to motion to Mr. Hersi to pull over.  Mr. Hersi was still on the
> phone and said something to Inspector Bell while making eye contact with him
> and shaking his head to indicate "no."  Inspector Bell testified that Mr. Hersi's
> semi-truck then swerved into the inspector's lane once again, even more than the
> first time, causing the inspector to "slam" on his brakes hard and swerve over the
> yellow line on the road and onto the "rumble sticks."  Inspector Bell announced
> over the radio that the semi-truck driver failed to pull over and also tried to run
> him off the road.
>
> {¶ 19} After traveling approximately six miles on Interstate 76 without stopping
> for Inspector Bell, Mr. Hersi turned onto Interstate 71.  Trooper Melicant passed
> Inspector Bell around this time and then took the lead in the pursuit for another

two miles.  Trooper Mossor also testified that the entire incident took place over a span of approximately seven-to-eight miles.  Trooper Melicant testified that he pulled up along the side of Mr. Hersi's semi-truck and motioned to him to pull over. He testified, "At that time, I could clearly see up in the cab that Mr. Hersi was shaking his fist at me and yelling, and all of a sudden, that's when he swerved at me * * *."  When asked if he felt the swerve was done on purpose, Trooper Melicant testified, "He absolutely did it on purpose."  The trooper testified that had he not made an evasive action, Mr. Hersi's semi-truck would have hit him. Inspector Bell also testified that he observed Mr. Hersi's semi-truck swerve toward Trooper Melicant.  The trooper testified that Mr. Hersi's semitruck "rode the berm" for about one more mile before eventually stopping.

{¶ 20} Mr. Hersi's written statement to the State Highway Patrol was also entered into evidence at trial.  In his written statement, Mr. Hersi states that he first saw Inspector Bell at the weigh station and did not stop for him because he felt it was discrimination.  He admits that he saw the overhead lights, but states that he was "set up" and it was unfair if they were looking for stolen vehicles or "highway [terrorism]."  He further admits that he did not acknowledge the officers by stopping right away.  He states that after he saw the overhead lights, he traveled less than three miles down the road.  He admits that he was on the phone with his family telling them that three officers were parked, and one followed him after passing three other trucks.  He also states that he has been stopped for safety inspections many times in the past.

* * *

{¶ 24} . . . Inspector Bell did testify at trial that the wind or weather could possibly move a semi-truck's empty trailer, but he testified that Mr. Hersi swerved toward him on two different occasions, causing him to apply his brakes to avoid an accident both times.  The second swerve caused Inspector Bell to swerve over the yellow line and onto the "rumble sticks" on the side of the road. Inspector Bell testified that if he had not applied his brakes and swerved away, the two vehicles would have made contact and crashed.  He testified that all of Mr. Hersi's semi-truck, except for the right-side wheels, came into the inspector's lane before Mr. Hersi swerved back into his original lane.  Trooper Melicant also testified that had he not made his own evasive action when Mr. Hersi later swerved toward him, Mr. Hersi's semi-truck would have hit him.

{¶ 25} In Trooper Melicant's dash cam video, he can be heard saying, "Pull over, pull over" while next to Mr. Hersi's semi-truck.  The trooper's vehicle then veers slightly to the left and he can be heard saying, "Medina, he's trying to cut me off as well."  Trooper Mossor joined the pursuit behind both Trooper Melicant and Inspector Bell, and Trooper Mossor's dash cam video was also entered into evidence.  Although not entirely conclusive and unfortunately recorded from a substantial distance by a vehicle that is attempting to catch up to the pursuit, Mr. Hersi's semi-truck appears in the video to slightly veer toward Trooper Melicant's

vehicle before abruptly swerving away from the trooper. Trooper Melicant veers slightly to the left and can then be heard announcing over the radio that Mr. Hersi is trying to cut him off as well.

* * *

{¶ 27} At trial, the State presented evidence, if believed, that established Mr. Hersi knowingly attempted to cause physical harm to Inspector Bell by means of a deadly weapon. Once again, Inspector Bell testified that Mr. Hersi made eye contact with him and swerved his semi-truck into the inspector's lane of travel twice, and the second time caused the inspector to swerve his own vehicle over the yellow line and onto the "rumble sticks" on the side of the road. He testified that Mr. Hersi "didn't mistakenly turn his steering wheel" and had the inspector not swerved away, the vehicles would have made contact and crashed. The second time, Mr. Hersi again made eye contact with Inspector Bell, then said something to him and shook his head to indicate "no." Mr. Hersi swerved toward Inspector Bell once again, causing the inspector to "slam" on his brakes and drive over the yellow line and onto the "rumble sticks."

*State v. Hersi*, Ninth Dist. Medina No. 17CA0021-M, 2018-Ohio-123, ¶¶ 17-20, 24-25, 27

(January 19, 2018); ECF Doc. 9-1 at 131-37.

## V.       Analysis

### A.       Grounds One

In Ground One, Hersi argues that appellate counsel was constitutionally ineffective

because he failed to argue on direct appeal that the indictment was deficient for failing to specify

whether Hersi's alleged swerving toward Inspector Bell or his swerving toward Trooper

Melicant formed the basis for his felonious assault charge. ECF Doc. 1 at 4. Warden Marquis

responds that Hersi's ground one claim is meritless because he has not shown that the Ohio

Court of Appeals unreasonably concluded that appellate counsel's performance was not

deficient. ECF Doc. 9 at 18, 26.[5]

---

[5] Curiously, the majority of the section purportedly responding to Hersi's Ground One claim in Warden Marquis's brief argues that Hersi did not show that the Ohio Court of Appeals unreasonably concluded that sufficient evidence supported both his failure-to-comply and felonious-assault convictions. *See* ECF Doc. 9 at 19-26. Warden Marquis does not explain why the sufficiency of evidence to establish the essential elements of both charges in the indictment is relevant to Hersi's claim that the allegations as

As a preliminary matter, Hersi did not procedurally default his Ground One claim.  Hersi properly presented the same ineffective-assistance-of-appellate-counsel claim – alleging that appellate counsel unreasonably failed to argue on direct appeal that the allegations in the indictment were insufficient – for the first time in his Ohio App. R. 26(B) application to reopen. *See State v. Davis*, 119 Ohio St. 3d 422, 427 (2008) ("App. R. 26(B) creates a special procedure for a thorough determination of a defendant's allegations of ineffective assistance of counsel. The rule creates a separate forum where persons with allegedly deficient appellate counsel can vindicate their rights."); ECF Doc. 9-1 at 139-45.  Further, Hersi gave the Ohio Supreme Court an opportunity to review his claim when he presented it in his timely collateral appeal.  ECF Doc. 9-1 at 165, 168-81.  Thus, by properly presenting his Ground One claim through one full round of review before the Ohio courts, Hersi avoided procedural defaulting on his Ground One claim.  *Gerth*, 938 F.3d at 826-27; *O'Sullivan*, 526 U.S. at 845; *Manning*, 912 F.2d at 881; *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.

Hersi's Ground One claim is, however, meritless.  The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 392 (1985).  In *Strickland v. Washington*, the U.S. Supreme Court established that a petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. 466 U.S. 668, 688 (1984).  This standard applies to claims that appellate counsel was constitutionally ineffective.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  To act as counsel guaranteed by the Sixth Amendment, appellate

---

stated in the indictment were unclear as to whether he was alleged to have feloniously assaulted Bell or Melicant.  *See* ECF Doc. 9 at 19-26.

counsel need only exercise reasonable professional judgment, and is not obligated to raise every "colorable" claim on appeal. *Jones*, 463 U.S. at 754; *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Further, counsel cannot be ineffective for failing to raise a meritless claim. *Shaneberger*, 615 F.3d at 452; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (indicating that the task of winnowing out less persuasive arguments on appeal is the hallmark of an effective appellate advocate). For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Ohio Court of Appeals reviewed Hersi's Ground One ineffective-assistance-of-appellate-counsel claim on the merits, this court reviews the claim under the highly deferential AEDPA standard. 28 U.S.C. § 2254(d); *see also Harrington*, 526 U.S. at 88, 102-03; *Schriro*, 550 U.S. at 473. Hersi cannot show that the Ohio Court of Appeals' conclusion that appellate counsel's representation was not constitutionally ineffective was: (1) contrary to or based on an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts on the evidence presented. 28 U.S.C. § 2254(d). Here, the Ohio Court of Appeals expressly applied the correct standard for ineffective-assistance-of-counsel claims under *Strickland*. ECF Doc. 9-1 at 149-50. Further, after reviewing the record, the Ohio Court of Appeals reasonably concluded that counsel's performance was not deficient for failing to argue that the indictment failed to indicate whether the felonious assault charge was based on Hersi's swerving toward Bell or his swerving toward Melicant because the indictment *did* specify that Hersi was charged with feloniously assaulting Bell. *Strickland*, 466 U.S. at 688;

16

*Shaneberger*, 615 F.3d at 452; ECF Doc. 9-1 at 150; *see also* ECF Doc. 9-1 at 4 ("JIBRIIL A.

HERSI unlawfully did knowingly cause or attempt to cause physical harm to another, *to wit:*

*Richard Bell*, by means of a deadly weapon" (emphasis added)).

Because there is nothing to suggest that the Ohio Court of Appeals' disposition of Hersi's

Ground One claim was either incorrect or unreasonable, I recommend that the claim be denied

for lack of merit.

### B.      Ground Two

In his Ground Two claim, Hersi argues that his appellate counsel was ineffective for

failing to argue on direct appeal that the state failed to present sufficient evidence to establish the

essential elements of felonious assault.  ECF Doc. 1 at 5.  Warden Marquis responds that Hersi's

Ground Two claim is procedurally defaulted because he failed to raise it in his Ohio App. R.

26(B) application to reopen his direct appeal.  ECF Doc. 9 at 27-28.  Further, Warden Marquis

argues that Hersi cannot overcome his procedural default because he has not shown cause and

prejudice for the default, or that a manifest injustice would occur if the court did not entertain his

claim.  ECF Doc. 9 at 28-29.  Finally, Warden Marquis asserts that Hersi's Ground Two claim is

meritless because appellate counsel *did* raise the claim on direct appeal and the Ohio Court of

Appeals reasonably denied the claim on the merits.  ECF Doc. 9 at 29-30.

### 1.      Procedural Default

Warden Marquis is correct that Hersi procedurally defaulted his Ground Two claim that

appellate counsel's representation was constitutionally ineffective when he failed to argue that

the state failed to present sufficient evidence to support his felonious assault conviction.  Here,

Hersi did not raise the claim in his direct appeal to the Ohio Supreme Court[6] or in his App. R. 26(B) application to reopen his appeal before the Ohio Court of Appeals.  *Davis*, 119 Ohio St. 3d at 425-27 (indicating that an ineffective-assistance-of-appellate-counsel claim may be raised for the first time in an Ohio App. R. 26(B) application or on direct appeal to the Ohio Supreme Court); ECF Doc. 9-1 at 139-45.  Although Hersi raised the claim in his appeal to the Ohio Supreme Court from the denial of his Ohio App. R. 26(B) application, Ohio law precluded him from raising that claim because he had not first presented it to the Ohio Court of Appeals in his application to reopen.  *See State v. Phillips*, 27 Ohio St. 2d 294, 302 (1971) ("It is an established rule of long standing in this state that a constitutional question . . . can not be raised in the Supreme Court unless it was presented and urged in the courts below." (quoting *State, ex rel. King, v. Shannon*, 170 Ohio St. 393, 394 (1960))); ECF Doc. 9-1 at 164-81.

Further, Hersi has not argued that: (1) cause and prejudice excuse his procedural default; or (2) that a manifest injustice would result if the court declined to entertain his Ground Two claim.  *Coleman*, 501 U.S. at 750.  And because Hersi represented himself in filing his Ohio App. R. 26(B) application to reopen, he cannot show cause by pointing to an external factor that prevented him from raising the claim.  *Id.*; ECF Doc. 9-1 at 139-45.  Moreover, Hersi has not produced any new reliable evidence not presented at trial indicating that he was factually innocent.  *Coleman*, 501 U.S. at 750; *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324.  Thus, Hersi cannot escape his procedural default of his Ground Two claim.

---

[6] Hersi did not file a direct appeal to the Ohio Supreme Court, and the time do so expired on March 4, 2018 – 45 days after the Ohio Court of Appeals issued its January 19, 2018 order affirming Hersi's convictions and sentences.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1).

Accordingly, because Hersi cannot overcome the procedural default of his Ground Two claim, I recommend that the claim be dismissed as procedurally defaulted.

### 2.    Merits

Even if not procedurally defaulted, Hersi's Ground Two claim would also fail on the merits.  First, Hersi's claim does not really make sense.  He alleges his appellate counsel was ineffective for failing to raise a claim that there was insufficient evidence to support a conviction for felonious assault because there was not enough evidence that Hersi caused or attempted to cause serious physical harm to Officer Bell or Trooper Melicant.  But Hersi's second assignment of error on direct appeal stated, in part: "The evidence was insufficient to support the jury verdicts of "guilty" as to . . . Count II, the charged offense of felonious assault."  By challenging the sufficiency of the evidence to support the felonious assault conviction, Hersi's direct appeal counsel necessarily challenged the state's proof of every element of that charge, including whether there was evidence that Hersi caused or attempted to cause serious physical harm.  So, it makes no sense to now allege that appellate counsel's representation was ineffective when the very claim Hersi argues should have been raised *was* raised.

Second, Hersi cannot show that the Ohio Court of Appeals could not have reasonably concluded that appellate counsel was constitutionally ineffective for not claiming that the state failed to present sufficient evidence for a reasonable juror to conclude that he was guilty of felonious assault.  28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 88, 102-03; *Bell*, 535 U.S. at 694; *Bobby*, 565 U.S. at 24.  In fact, *no reasonable court* could have reached the conclusion that appellate counsel's representation was deficient for failing to present a sufficiency-of-the-evidence claim because appellate counsel *did* present that claim on direct appeal.  *See* ECF Doc. 9-1 at 63, 73-91.  Thus, Hersi cannot show that the Ohio Court of Appeals could not have

reasonably concluded that appellate counsel's representation was deficient for failing to present a sufficiency-of-the-evidence challenge to his felonious assault conviction.  28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 88, 102-03; *Bell*, 535 U.S. at 694; *Bobby*, 565 U.S. at 24.

Therefore, even if the court were to review Hersi's Ground Three claim on the merits, it would still fail for lack of merit.

### C.      Call for Investigation

Finally, Hersi's call for an investigation in his "Supplement to Petition for Writ of Habeas Corpus" fails to present any cognizable federal constitutional issue for habeas review.[7] *See generally* ECF Doc. 3-1.  Simply put, Hersi's call for investigation does not invoke any constitutional standards or any decisions by the U.S. Supreme Court.  *See* ECF Doc. 3-1; *see also* 28 U.S.C. § 2254(d).  Thus, Hersi's supplemental filing does not raise any claim cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Even if the court were to liberally construe Hersi's supplemental filing to raise a cognizable federal constitutional claim – whatever that claim might be – the claim would be procedurally defaulted because Hersi did not raise any claims regarding the trial court's hearing

---

[7] Hersi's supplement is very difficult to follow.  It does not appear he actually is submitting it to challenge his conviction; instead, he seems to have attempted to raise questions concerning pretrial proceedings.  As such, even if this claim had been raised in state court and fairly presented as a federal law violation – and it does not appear that it was – we would lack subject matter jurisdiction to consider the claim.  Title 28 U.S.C. § 2254(a) indicates the limited jurisdiction of federal courts in habeas cases: "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court **only on the ground that he is in custody** in violation of the Constitution or laws or treaties of the United States." (Emphasis added).  Plainly, Hersi is not in custody as a result of any pretrial order of the trial court.

schedule on direct appeal to the Ohio Court of Appeals or the Ohio Supreme Court or in any collateral proceedings. *See generally* ECF Doc. 9-1; *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction," and "[t]he appropriate liberal construction requires active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief" (internal quotation marks and citations omitted)).  And Hersi has not presented any cause-and-prejudice argument or pointed to any new evidence of actual innocence that would overcome his procedural default.  Thus, any cognizable claims that could be construed from Hersi's supplemental filing would be due to be dismissed as procedurally defaulted.

Further, even if the court were to construe Hersi's supplemental filing as a motion for leave to conduct discovery, it would still fail.  Here, it is worth noting that Hersi filed a motion expressly seeking to conduct discovery to investigate the trial court proceedings on December 2, 2016 and March 2 and 3, 2017.  *See* ECF Doc. 10 at 4; ECF Doc. 11 at 1-3; ECF Doc. 14.  And the court denied that motion because Hersi had not shown good cause for allowing discovery or that the subjects he wished to discover were material to his habeas petition.  *See* ECF Doc. 15 at 6-7 ("Hersi has not set forth any specific factual allegations indicating that a more-fully developed exploration of trial counsel's motion for continuance, request for dismissal of the felonious assault charge, or request for a bond hearing would illustrate that he is entitled to habeas relief."  (citing *Bracy v. Gramley*, 520 U.S. 890, 908-09 (1997); and *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  And Hersi's supplemental filing (ECF Doc. 3-1), if construed as a motion to conduct discovery, would fail for the same reasons.

Accordingly, I recommend that the court DISMISS the assertions in Hersi's "Supplement to Petition for Writ of Habeas Corpus" for failing to state a cognizable claim.

VI.     **Certificate of Appealability**

A.      **Legal Standard**

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

B.      **Analysis**

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id*. at 486.  If the Court accepts my recommendations, Hersi will not be able to show that the Court's rulings on his procedurally

22

defaulted, meritless, and non-cognizable claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## VII.    Recommendations

I recommend that Hersi's Ground One claim be DENIED as meritless and that his Ground Two claim be DISMISSED as procedurally defaulted.  I further recommend that Hersi's call for investigation in his "Supplement to Petition for Writ of Habeas Corpus" (ECF Doc. 3-1) be DISMISSED because it fails to state an issue cognizable on federal habeas review.  I further recommend that Hersi's petition for writ of habeas corpus be DENIED and that he not be granted a certificate of appealability.

Dated: May 26, 2020

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

23